22 Shawano, LLC, Bonduel City Express Corp.,
J. S. Rusch, Inc., Lee'z Gas and Mini Mart, Inc.
and Schierl Sales Corp., Plaintiffs-Respondents,

Shawano Petroleum, LLC and
Welsing and Son, LLC,
Plaintiffs,

v.

Dr. R. C. Samanta Roy Institute of Science and
Technology, Inc., Defendant-Appellant.
[2005AP427]

Auto Prep Center of Shawano, Inc.,
Plaintiff-Respondent,

v.

Dr. R. C. Samanta Roy Institute of Science and
Technology, Inc., Defendant-Appellant.
[2005AP428]

Court of Appeals

*Nos. 2005AP427, 2005AP428. Submitted on briefs
November 28, 2005.—Decided December 28, 2005.*

2006 WI App 14

(Also reported in 709 N.W.2d 98.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Winston A. Ostrow* and *Sherry D. Coley* of *Godfrey & Kahn, S.C.*, Green Bay.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Francis J. Slattery* of *Slattery Law Offices, LLC*, Oshkosh.

A nonparty brief was filed by *Thomas L. Skalmoski* of *Weiss Berzowski Brady LLP*, of Milwaukee, for Petroleum Marketers Association of Wisconsin/Wisconsin Association of Convenience Stores, Inc.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1.　PETERSON, J.　The Wisconsin Unfair Sales Act, Wis. Stat. § 100.30, generally prohibits a retailer from selling gasoline below cost.[1] However, the Act does not apply when a retailer acts in good faith to meet a competitor's price. In this case, the circuit court concluded the retailer did not act in good faith when it sold gasoline below cost and entered judgment accordingly. The court appeared to interpret the Act to require retailers to survey competitors' prices at least every twenty-four hours. Because the Act imposes no such requirement, we conclude the court erred when it found the retailer violated the Act. Accordingly, we reverse the judgment.

¶ 2.　The retailer here is the Dr. R.C. Samanta Roy Institute of Science and Technology, Inc. (the Institute), which operates the Midwest Oil Mobil Service Station in Shawano. The Institute competes with Shawano area gasoline stations operated by 22 Shawano, LLC; Bonduel City Express Corp.; J.S. Rusch, Inc.; Lee'z Gas and Mini Mart, Inc.; Sheirl Sales Corp., and Auto Prep Center of Shawano, Inc.[2] These competitors com-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] Shawano Petroleum, LLC, and Welsing and Son, LLC, also operate gasoline stations in competition with the Institute and were initially named plaintiffs. However, those stations voluntarily dismissed their claims and are not parties to this appeal.

menced private actions, as allowed under the Act, against the Institute, seeking damages and attorney fees.

¶ 3. The relevant facts are undisputed. At the beginning of the day on October 17, 2002, the Institute was selling regular unleaded gasoline for $1.54 per gallon. The Institute's store was managed by Naarah Kindseth. Kindseth's practice was to survey the Institute's competitors' gasoline prices each day and adjust the Institute's price to correspond with the lowest competitor's price. Kindseth would then file a Notice of Meeting Competition with the Wisconsin Department of Agriculture, Trade and Consumer Protection in the manner required by the Act.

¶ 4. When Kindseth conducted her survey on October 17, sometime between 7:40 a.m. and 8 a.m., the station operated by Auto Prep Center was charging $1.54 per gallon, a price below cost. Accordingly, Kindseth left the Institute's price at $1.54 per gallon and filed a notice with the department. However, at approximately 9 a.m., Auto Prep Center raised its price to $1.59 per gallon. As a result, at that time, the Institute was the only station in the area selling at $1.54 per gallon.

¶ 5. On October 18, Kindseth was out of town and did not conduct her price survey in the morning. At around 2 p.m., the local Kwik Trip station conducted a price survey, noted that the Institute was selling at $1.54 per gallon, and lowered its price to match. Around 4:30 p.m., Kindseth conducted her price survey, saw Kwik Trip's price of $1.54 per gallon, and did not change the Institute's price. Kindseth filed the required notice with the department that the Institute was meeting Kwik Trip's price.

¶ 6.    Pursuant to the Act, two private actions were commenced against the Institute by its competitors.[3] As relevant to this appeal, the competitors alleged that the Institute violated the Act by selling gasoline below cost on October 18 and that the competitors were entitled to damages and attorney fees.[4] The cases were consolidated and tried to the court on December 14, 2004. The Institute conceded that its gasoline price on October 18 was below cost. However, it contended its actions did not violate the Act because it set its price in good faith to meet competition and timely filed the required notice with the department.

¶ 7.    The court found the Institute did not act in good faith. Its good faith finding rested primarily on the timing of the Institute's price surveys:

> There's also the indication in the record that at the time that this happened this was a rising market; the prices were going up again. That should alert the retailers that they better be watching their competitors' prices if you're selling under your cost. If you're above your cost apparently it doesn't make any difference, but if you're

[3] WISCONSIN STAT. § 100.30(5m) provides:

Private cause of action. Any person who is injured or threatened with injury as a result of a sale or purchase of motor vehicle fuel in violation of sub. (3) may bring an action against the person who violated sub. (3) for temporary or permanent injunctive relief or an action against the person for 3 times the amount of any monetary loss sustained or an amount equal to $2,000, whichever is greater, multiplied by each day of continued violation, together with costs, including accounting fees and reasonable attorney fees, notwithstanding s. 814.04(1). An action under this subsection may not be brought after 180 days after the date of a violation of sub. (3).

[4] Shawano County Case No. 03CV25 was initially commenced against "Sist Corporation" or "Dr. Samantha Roy." However, the competitors amended their summons and complaint to name the Institute as the sole defendant.

selling under cost and you want to be the lowest person in town, you better be watching your competitors. Now again there's nothing in the statute that says how often you have to do that, and the department says they use a twenty-four hour rule to determine whether there was good faith in attempting to meet the competition, but in a rising market I think the argument can be made that twenty-four hours might be too short of a time.

Thus, the court concluded the Institute, by failing to aggressively survey its competition, acted in bad faith and thus violated the Act. The court awarded each of the six competitors $2,000 in statutory damages plus attorney fees. Judgment in the competitors' favor was entered accordingly.

## DISCUSSION

■

¶ 8. The Act prohibits the sale of gasoline at a price "less than cost as defined in this section . . . ." WIS. STAT. § 100.30(3). However, the Act does not apply where "[t]he price of merchandise is made in good faith to meet an existing price of a competitor and is based on evidence in the possession of the retailer . . . in the form of . . . [a] price survey . . . ." WIS. STAT. § 100.30(6)(a)7. The Act also requires a gasoline retailer to notify the department when the retailer sells below cost to meet competition. *See* WIS. STAT. § 100.30(7)(a). Section 100.30(7)(a) provides:

If a retailer, wholesaler, wholesaler of motor vehicle fuel or refiner *lowers in good faith the price of motor vehicle fuel* below the applicable price specified under sub. (2)(am)1m. to meet an existing price of a competitor, the person shall submit to the department notification of the lower price before the close of business on the day

on which the price was lowered in the form and the manner required by the department. (Emphasis added.)

A retailer that complies with § 100.30(7)(a) is immune from liability in a private action, like the one commenced here by the competitors. *See* WIS. STAT. § 100.30(5m) and (7)(c)2.

¶ 9.    The competitors concede the Institute filed the required notice with the department on the day it lowered its price. Therefore, the dispute is whether the Institute acted in good faith when it priced gasoline to meet the price of a competitor.

¶ 10.    To decide this issue, we must interpret the statute and apply it to the undisputed facts. These are questions of law that we review independently. *Gibson v. Overnite Transp. Co.*, 2003 WI App 210, ¶ 12, 267 Wis. 2d 429, 671 N.W.2d 388. When we interpret statutes, we begin with the language of the statute and, if the meaning is plain, we ordinarily stop our inquiry. *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*

¶ 11.    Good faith is not specifically defined in the Act. Generally, good faith is defined as "a state of mind evidencing 'honesty in belief or purpose . . . [or] absence of intent to defraud or to seek unconscionable advantage.' " *Ackerman v. Hatfield*, 2004 WI App 236, ¶ 10, 277 Wis. 2d 858, 691 N.W.2d 396 (quoting BLACK'S LAW

DICTIONARY 713 (8th ed. 2004)). The competitors do not argue that Kindseth set the Institute's price or delayed her price survey until 4:30 p.m. on October 18 with the intent to defraud or seek an unconscionable advantage. Instead, the competitors argue that a retailer that fails to conduct a price survey for more than twenty-four hours cannot in good faith set its price to meet competition.

¶ 12. However, the Act does not specify how often price surveys must be conducted. The timing of price surveys is mentioned in a note following WIS. ADMIN. CODE § ATCP 105.23(1): "The department recommends that sellers maintain daily price surveys ... especially for days that they are selling motor vehicle fuel below costs ...."[5] Nowhere does the department require or even recommend a survey every twenty-four hours; rather, it recommends *daily* price surveys. It is undisputed that the Institute conducted price surveys on October 17 and October 18. Thus, the Institute performed "daily price surveys" and complied with the department's recommendation.

¶ 13. Indeed, the only time constraint included in the Act is that a notice of meeting a competitor's price must be filed "on the day" the price was lowered. *See* WIS. STAT. § 100.30(7)(a). It is uncontested that the Institute filed a notice on October 18 and therefore complied with the Act's time requirement.[6]

_____

[5] All references to the Wisconsin Administrative Code are to the May 1999 version unless otherwise noted.

[6] The Institute argues the circuit court disregarded the "on the day" language regarding the timing of the notice. It quotes a portion of the circuit court's decision where the court stated, "There is nothing in the statute that says how often you have to do *that* ...." (Emphasis added.) The Institute's argument assumes "that" referred to filing the notice. However, read in context, "that" refers to conducting price surveys. The competi-

¶ 14.   The competitors attempt to support their argument by relying on a department "24–hour rule." However, neither the Act nor the administrative code provides or explains this rule. A department employee testified that the rule was designed to give retailers a twenty-four-hour grace period before the department would prosecute a violation of the Act. However, it is unclear from what event this twenty-four-hour grace period would run.[7] In any event, when interpreting a statute, we owe no deference to a department rule of prosecutorial policy, especially when that rule does not comport with the plain language of the Act and the administrative code provisions.

¶ 15.   In summary, there is no requirement that a retailer must conduct a price survey within any particular time period, let alone twenty-four hours. There is no evidence that Kindseth delayed her price survey or set the Institute's gasoline price with the intent to defraud or seek an unconscionable advantage. Because the competitors make no other arguments or offer no other evidence that the Institute acted in bad faith, the circuit court erred when it concluded otherwise.

*By the Court.*—Judgment reversed.

---

tors do not argue that the Institute failed to file a notice on October 18 or otherwise challenge the timing of the notice; instead, they argue the notice was a nullity because the price was not lowered in good faith.

[7] In their brief, the competitors claim the twenty-four hour grace period began at 9 a.m. on October 17 when Auto Prep Center raised its price to $1.59 and the Institute was the only retailer selling at $1.54.