Go America L.L.C., Gerry Krachey Inc.,
Robert A. Meyer and Greener's Corner Inc.,
Plaintiffs-Appellants,

v.

Kwik Trip, Inc.,
Defendant-Respondent,

Indianhead Oil Co., Inc.
d/b/a Holiday Stationstores,
Defendant.

Court of Appeals

No. 2005AP1512. Submitted on briefs January 19, 2006.
—Decided April 20, 2006.

2006 WI App 94

(Also reported in 715 N.W.2d 746.)

On behalf of the plaintiffs-appellants, the cause was submitted on the brief of *Timothy S. White* and *Matthew J. Reilly, White & Johnson, P.C.*, Cedar Rapids, Iowa, and *Brian C. McGraw*, Muscoda.

On behalf of the defendant-respondent, the cause was submitted on the brief of *William M. Conley* and *Jeffrey Simmons, Foley & Lardner LLP*, Madison.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J. The plaintiffs in this action are retail sellers of motor vehicle fuel in the Prairie du Chien area. They appeal the circuit court's summary judgment dismissing their claims that Kwik Trip, Inc., violated Wisconsin's Unfair Sales Act, WIS. STAT. § 100.30,[1] by selling motor vehicle fuel below cost as

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

defined by the act.[2] The appeal requires us to construe and apply provisions of the act that relate to the defense of lowering prices to meet an existing price of a competitor. We conclude: (1) "competitor" in the context of § 100.30(2)(cj), (6)(a)7, and (7)(a) may include a competitor located in a state bordering Wisconsin; and (2) assuming without deciding that a defendant must establish that it acted in good faith in order to be immune from liability under § 100.30(7)(c)2, the undisputed facts show that Kwik Trip acted in good faith. In addition, we reject the plaintiffs' argument that Kwik Trip improperly relied on the prices of Indianhead Oil Co., another competitor, for specified days in May 2003. Accordingly, we affirm.

## STATUTORY BACKGROUND

¶ 2. The Unfair Sales Act, Wis. Stat. § 100.30, generally prohibits Wisconsin motor vehicle fuel retailers[3] from selling motor vehicle fuel at a price below "cost" as that term is defined by the act. Section 100.30(2)(am)-(c) and (3).[4] Persons injured or threatened with injury as a result of a sale or purchase of motor vehicle fuel in violation of subsec. (3) may bring a private cause of action for injunctive relief and for damages. Section 100.30(5m). In addition, the district

---

[2] The circuit also granted summary judgment in favor of another defendant, Indianhead Oil Co., Inc., but the plaintiffs do not appeal that judgment.

[3] The act also applies to wholesalers, wholesalers of motor vehicle fuel, and refiners. *See* Wis. Stat. § 100.30(3). But for simplicity's sake, we refer only to "retailer" in this opinion.

[4] Wisconsin Stat. § 100.30(3) provides:

> **(3)** Illegality of loss leaders. Any sale of any item of merchandise either by a retailer, wholesaler, wholesaler of motor vehicle fuel or refiner, at less than cost as defined in this section with the intent

attorney or the Department of Agriculture, Trade, and Consumer Protection (the department) may bring actions for forfeiture or injunctions, § 100.30(4) and (5)(b); and the department may issue special orders against violators. Section 100.30(5)(a).

¶ 3. There are a number of exceptions to the prohibitions of the act. Wis. Stat. § 100.30(6). The exception relevant here applies when a retailer sells at below cost as defined in the statute "in good faith to meet an existing price of a competitor." Section 100.30(6)(a)7. Section 100.30(7)(a) provides that if a retailer "lowers in good faith the price of motor vehicle fuel" below cost as defined in the statute to meet an existing price of a competitor, the retailer "shall submit to the department notification of the lower price before the close of business on the day on which the price was lowered in the form and manner required by the department." If a retailer complies with subsec. (7)(a), the department may not proceed against the retailer under subsec. (5) and there is immunity from liability for a private cause of action. Section 100.30(7)(c).

## FACTUAL AND PROCEDURAL BACKGROUND[5]

¶ 4. Go America, L.L.C.; Gerry Krachey Inc.; Robert A. Meyer; and Greener's Corner Inc. each own and

---

or effect of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor, impairs and prevents fair competition, injures public welfare and is unfair competition and contrary to public policy and the policy of this section. Such sales are prohibited. Evidence of any sale of any item of merchandise by any retailer, wholesaler, wholesaler of motor vehicle fuel or refiner at less than cost as defined in this section shall be prima facie evidence of intent or effect to induce the purchase of other merchandise, or to unfairly divert trade from a competitor, or to otherwise injure a competitor.

[5] The facts summarized in paragraphs 4–6 are not disputed.

operate one or more convenience stores or service stations in Prairie du Chien, Wisconsin, or Seneca, Wisconsin, at which motor vehicle fuel is sold. Kwik Trip owns two convenience stores in Prairie du Chien that sell motor vehicle fuel.

¶ 5. Go America also owns a convenience store that sells motor vehicle fuel in Marquette, Iowa. Marquette is directly across the Mississippi River from Prairie du Chien. The communities are connected by State Highway 18 and the bridge connecting them does not contain any tolls impeding travel. Go America's Marquette store is approximately two to three miles from Kwik Trip's Prairie du Chien stores, and it takes approximately four to five minutes to travel from Go America's Marquette store to the furthest of Kwik Trip's two Prairie du Chien stores. Kwik Trip's sales records show that numerous customers from Marquette and other more distant communities in Iowa regularly purchase gasoline at Kwik Trip's Prairie du Chien store.

¶ 6. Because Iowa's gasoline tax is ten cents lower than Wisconsin's, a retailer of motor vehicle fuel can obtain gasoline fuel for approximately ten cents less a gallon in Iowa than in Wisconsin.

¶ 7. The plaintiffs filed this action in June 2003 alleging that Kwik Trip violated WIS. STAT. § 100.30 by intentionally selling motor vehicle fuel at less than cost as defined in the statute. Kwik Trip moved for summary judgment on the ground that it was immune from liability on a private cause of action under § 100.30(7)(c)2. Kwik Trip's submissions showed the following uncontroverted facts. On a number of days during 2003 and 2004, Kwik Trip's Prairie du Chien's stores sold gasoline at prices below cost as defined in the act. For each of these days, Kwik Trip filed "Notices

of Meeting Competition" with the department stating that Kwik Trip was changing its price to meet the prices of a competing gasoline retailer in Marquette, Iowa. On the dates relevant to this action, Go America's Marquette station was listed as a competitor.

¶ 8. The plaintiffs opposed summary judgment on three grounds that are relevant to this appeal. First, the "meeting competition" exception does not permit Wisconsin gasoline retailers to lower their prices to meet the prices of competitors in bordering states. Second, Kwik Trip was not immune from liability because it had not lowered its prices in good faith. Third, the notices of meeting competition Kwik Trip filed with the department did not immunize Kwik Trip from liability because its Prairie du Chien's stores and Go America's Marquette store were not competitors.

¶ 9. The circuit court agreed with Kwik Trip that the act does not require that a competitor be located in Wisconsin as opposed to a bordering state. The court also concluded that the act does not require a retailer who files a notice of meeting competition with the department under WIS. STAT. § 100.30(7)(a) to also prove that it lowered its price in good faith in order to be immune from liability for private causes of action under § 100.30(7)(c)2. In the alternative, the court concluded the undisputed evidence showed that Kwik Trip lowered its price in good faith to meet competition. Finally, the court concluded that there was a material dispute of fact whether Kwik Trip's Prairie du Chien stores and Go America's Marquette store were competitors for purposes of the act, and it therefore held that a trial would be scheduled on that issue alone.

¶ 10. After the circuit court issued its decision, the plaintiffs and Kwik Trip stipulated that the facts at trial would show that Kwik Trip's Prairie du Chien

stores and Go America's Marquette store are direct competitors, based on the circuit court's legal ruling that a competitor may be located in a bordering state and that Kwik Trip need not prove good faith. The parties further stipulated that the circuit court could enter summary judgment dismissing the complaint and the plaintiffs could pursue on appeal the three issues we discuss below.

## ANALYSIS

¶ 11. On appeal, the plaintiffs contend that the circuit court erred in granting summary judgment against them because: (1) an out-of-state retailer is not a competitor within the meaning of WIS. STAT. § 100.30(6)(a)7 and (7)(a); (2) in order to be immune from liability on a private cause of action under § 100.30(7)(c)2, a retailer must prove that it lowered its prices in good faith in addition to proving that it filed the required notices with the department, and Kwik Trip did not prove good faith; and (3) Kwik Trip may not rely on the prices of Indianhead Oil Co. for purposes of obtaining the immunity provided by § 100.30(7)(c)2 for the period from May 19 through May 23, 2003.

¶ 12. When we review the grant or denial of a summary judgment, we employ the same methodology as the circuit court, and our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; WIS. STAT. § 802.08(2).

¶ 13. The issues raised by the plaintiffs require that we construe the provisions of WIS. STAT. § 100.30.

When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If, employing these principles, statutory language is unambiguous—that is, there is only one reasonable meaning—we apply this plain meaning. *Id.*, ¶ 46. On the other hand, if the statutory language is capable of being understood by reasonably well-informed persons in two or more senses, then we may employ sources extrinsic to the statutory text; extrinsic sources are typically items of legislative history. *Id.*, ¶¶ 47, 50. Legislative history may also be consulted to reinforce the plain meaning of a statute. *Id.*, ¶ 56 n.10.

I. Whether "Competitor" May Be Out of State

¶ 14. Wisconsin Stat. § 100.30(6)(a)7 provides:

**(6)** Exceptions. (a) The provisions of this section shall not apply to sales at retail or sales at wholesale where:

. . . .

7. The price of merchandise is made in good faith to meet an *existing price of a competitor* and is based on

evidence in the possession of the retailer, wholesaler, wholesaler of motor vehicle fuel or refiner in the form of an advertisement, proof of sale or receipted purchase, price survey or other business record maintained by the retailer, wholesaler, wholesaler of motor vehicle fuel or refiner in the ordinary course of trade or the usual conduct of business.

(Emphasis added.) Section 100.30(7)(a) uses the same term, "existing price of a competitor," in describing the notice requirement:

(7) NOTIFICATION REQUIREMENTS. (a) If a retailer, wholesaler, wholesaler of motor vehicle fuel or refiner lowers in good faith the price of motor vehicle fuel below the applicable price specified under sub. (2) (am) 1m. to meet an *existing price of a competitor*, the person shall submit to the department notification of the lower price before the close of business on the day on which the price was lowered in the form and the manner required by the department.

(Emphasis added.)

¶ 15. "Existing price of a competitor" is defined in WIS. STAT. § 100.30(2)(cj) as:

(cj) "Existing price of a competitor" means a price being simultaneously offered to a buyer for merchandise of like quality and quantity by a person who is a direct competitor of the retailer, wholesaler, wholesaler of motor vehicle fuel or refiner and from whom the buyer can practicably purchase the merchandise.

The definition of § 100.30(2)(cj) imposes the requirement that the merchandise be "of like quality and quantity" and that the buyer "can practicably purchase the merchandise," but it does not define "competitor" or "direct competitor." There is no definition of "competitor" or "direct competitor" in the act. Because "competi-

805

tor" is not defined in the statute and is not a technical word, we give it its ordinary meaning. *Kalal*, 271 Wis. 2d 633, ¶ 45.

██

¶ 16. The common meaning of words may be established by the definition of a recognized dictionary. *Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 16, 245 Wis. 2d 396, 629 N.W.2d 662 (citation omitted). A recognized dictionary definition of "competitor" is: "one selling or buying goods or services in the same market as another." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 235 (10th ed. 1999). There is nothing in the plain language of the statute or the common meaning of competitor that limits competitors to those in the same state.

¶ 17. The plaintiffs argue that it is inconsistent with the purposes of the act to construe "competitor" to include an out-of-state entity. WISCONSIN STAT. § 100.30(1) states the policy behind the act:

> **(1)** POLICY. The practice of selling certain items of merchandise below cost in order to attract patronage is generally a form of deceptive advertising and an unfair method of competition in commerce. Such practice causes commercial dislocations, misleads the consumer, works back against the farmer, directly burdens and obstructs commerce, and diverts business from dealers who maintain a fair price policy. Bankruptcies among merchants who fail because of the competition of those who use such methods result in unemployment, disruption of leases, and nonpayment of taxes and loans, and contribute to an inevitable train of undesirable consequences, including economic depression.

We have said that the act was intended "to protect small businesses from being run out of business by the predatory pricing practices of large competitors." *Orion Flight Services, Inc. v. Basler Flight Service*, 2004 WI

App 222, ¶ 1, 277 Wis. 2d 819, 692 N.W.2d 804.[6] According to the plaintiffs, allowing Kwik Trip to set its price below cost as defined in the statute because of prices in Iowa, which has lower gasoline taxes, disproportionately impacts small businesses such as theirs to the advantage of large businesses such as Kwik Trip.

■■

¶ 18. This argument is not persuasive. The legislature has chosen to create certain exceptions in WIS. STAT. § 100.30(6)(a) to the prohibition of sales at less than the statutorily defined cost; subd. 7. provides that one of these exceptions is retail and wholesale sales "made in good faith to meet an existing price of a competitor." This exception applies to all retail and wholesale sales, regardless of the size of the business, and expresses the legislature's policy choice that lowering prices for this purpose is not the type of unfair competition the act is intended to prohibit. Indeed, as Kwik Trip points out, not permitting Wisconsin sellers to lower prices in good faith to meet the prices of out-of-state competitors puts Wisconsin businesses at a competitive disadvantage with Iowa sellers of motor vehicle fuel. The absence of a limitation on "competitor" to in-state competitors is not unreasonable and is not inconsistent with the purposes of the act.

¶ 19. The plaintiffs also argue that our decision in *Gross v. Woodman's Food Market, Inc.*, 2002 WI App 295, 259 Wis. 2d 181, 655 N.W.2d 718, supports their position. There we concluded that the terminal "closest

---

[6] In *Orion Flight Services, Inc. v. Basler Flight Service*, 2004 WI App 222, ¶¶ 22–24, 277 Wis. 2d 819, 692 N.W.2d 804, rev. granted on March 8, 2005 at 2005 WI 60, 281 Wis. 2d 112, 697 N.W.2d 471, we held that "motor vehicle fuel" did not include aviation fuel.

to the retailer" in Wis. Stat. § 100.30(2)(am)1m.c. did not mean the terminal closest to the corporate headquarters. *Gross*, 259 Wis. 2d 181, ¶ 43. We decided that was an unreasonable construction because the location of the corporate headquarters had no relation to the location of the retail sale, explaining: "Under Woodman's construction, for example, if a corporate retailer has headquarters in a distant state, the terminal price in that distant state determines the motor vehicle fuel price in Wisconsin, thereby affecting the market in Wisconsin." *Id.* The only reasonable construction, we concluded, was that " 'terminal closest to the retailer' means the terminal closest to the location where the retail sale occurs." *Id.*

¶ 20. The plaintiffs find support in our rejection in *Gross* of the concept that terminal prices in a "distant state" should determine prices in Wisconsin. However, a "distant state" is not the same as a few miles across the Wisconsin border. Indeed, we concluded in *Gross* that the proper terminal—the one closest to the location of the retail sale in Onalaska, Wisconsin—was the terminal in Eyota, Minnesota. *Id.* This conclusion is inconsistent with construing the act to prevent prices in Wisconsin from being affected by prices in neighboring states. *Gross* does not support the plaintiffs' position.

¶ 21. We conclude that "competitor" in the definitional phrase "existing price of a competitor" in Wis. Stat. § 100.30(2)(cj) is not limited to competitors located in Wisconsin. The plain language does not contain that limitation and we see nothing else in § 100.30 that suggests the legislature intended such a limitation.[7]

---

[7] Although we conclude there is no ambiguity on this point, we observe that, in the 2003–04 legislative session, the legisla-

## II. Whether Immunity from Liability Requires a Showing of Good Faith

¶ 22. The plaintiffs argue that Kwik Trip is not immune from liability under Wis. Stat. § 100.30(7)(c)2 unless it lowered its prices to meet the existing price of a competitor in good faith. According to the plaintiffs, Kwik Trip did not lower its prices in response to the prices at Go America's Marquette store but, instead, began to do that only after Go America opened its store in Prairie du Chien, where Kwik Trip had two stores. Kwik Trip's purpose, the plaintiffs assert, was to stifle competition in Prairie du Chien and, thus, their conduct was not in good faith.

¶ 23. Wisconsin Stat. § 100.30(7)(c) provides:

ture considered and rejected 2003 A.B. 415, which created § 100.30(2)(cj)2 to define "existing price of a competitor" to mean "a price . . . offered . . . by a person *located in this state* who is a direct competitor . . . ." (Emphasis added.) The Legislative Reference Bureau's Analysis of 2003 A.B. 215 states:

> Under current law, among those sales that are exempt from the requirements of the Unfair Sales Act are sales where the price of merchandise is established in good faith to meet an existing price of a competitor . . . . Under this bill, the exemption applies with respect to the sale of motor vehicle fuel only if the direct competitor is located in this state.

Kwik Trip argues that this demonstrates that the legislature believes current law permits retailers to meet the price of competitors located outside Wisconsin and rejected an attempt to change that. Because the plaintiffs did not file a reply brief, they do not dispute the significance that Kwik Trip attaches to the legislature's decision not to enact 2003 A.B. 415. We take this as a concession that Kwik Trip's argument on this point is correct. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (a proposition asserted by a respondent and not disputed in a reply brief is taken as admitted).

(c) If a retailer, wholesaler, wholesaler of motor vehicle fuel or refiner complies with par. (a), all of the following apply:

1. The department may not proceed under sub. (5) against the retailer, wholesaler, wholesaler of motor vehicle fuel or refiner.

2. The retailer, wholesaler, wholesaler of motor vehicle fuel or refiner is immune from liability under sub. (5m).

¶ 24. The plaintiffs argue that "complies with par. (a) . . ." in WIS. STAT. § 100.30(7)(c) means that the retailer must prove both that "it lower[ed] in good faith the price . . . to meet an existing price of a competitor" and that it "submit[ted] to the department notification" of that in the time, form, and manner required by the department. Section 100.30(7)(a).[8] Kwik Trip responds that the only act that § 100.30(7)(a) requires a retailer to take is the submission of the notification to the department, and, thus, a retailer "complies with par. (a)" when it does that. In the alternative, Kwik Trip argues the undisputed facts show that it did act in good faith in lowering its prices to meet the price of its competitor, the Go America store in Marquette.

¶ 25. After briefing was completed on this appeal (the plaintiffs did not file a reply brief), this court decided *22 Shawano, LLC v. Dr. R.C. Samanta Roy Institute of Science and Technology, Inc.*, 2006 WI App 14, 289 Wis. 2d 196, 709 N.W.2d 98. There we addressed a challenge to the defendant's good faith in lowering

---

[8] The department has promulgated rules specifying the contents of a proper "Notice of Meeting Competitor" and the manner of filing such notices. *See* WIS. ADMIN. CODE § ATCP 105.23.

810

prices to meet the price of a competitor. In that case there was no dispute that the defendant had filed the notice required by Wis. Stat. § 100.30(7)(a), but the circuit court, after a trial to the court, concluded that the defendant did not act in good faith because it did not do a price survey every twenty-four hours. *Id.*, ¶¶ 7, 9. The facts were that the defendant conducted a survey at 7:40 a.m. one day, lowered the price to $1.54 per gallon to match a competitor's price, and filed the requisite notice with the department; at 9:00 a.m. that day, the same competitor raised its price to $1.59 per gallon. *Id.*, ¶ 4. The defendant was out of town the next day and so did not conduct a survey until 4:30 p.m. that day. *Id.*, ¶ 5. By that time, another competitor had conducted a survey and lowered its price to match the defendant's price of $1.54 per gallon; the defendant therefore kept its price at $1.54 and filed a notice with the department. *Id.*, ¶¶ 3–5.

¶ 26. The specific issue of statutory construction we decided on appeal in *22 Shawano* was whether a retailer must conduct a price survey every twenty-four hours, or any particular time period, and we concluded the act did not require that. *Id.*, ¶¶ 1, 15. However, in framing that issue and summarizing our conclusion, we made statements that imply that, even if a defendant has filed the notice required by Wis. Stat. § 100.30(7)(a), in order to be immune from liability under § 100.30(7)(c)2, the defendant must also have acted in good faith:

> The [plaintiffs] concede the [defendant] filed the required notice with the department on the day it lowered its price. Therefore, the dispute is whether the Institute acted in good faith when it priced gasoline to meet the price of a competitor.

811

*22 Shawano*, 709 N.W.2d 98, ¶ 9.

> In summary, there is no requirement that a retailer must conduct a price survey within any particular time period, let alone twenty-four hours. There is no evidence that [the defendant] delayed [its] price survey or set [its] gasoline price with the intent to defraud or seek an unconscionable advantage. Because the competitors make no other arguments or offer no other evidence that the Institute acted in bad faith, the circuit court erred when it concluded otherwise.

*Id.*, ¶ 15.

¶ 27. Arguably these comments suggest that, even where a defendant has filed a notice as required by Wis. Stat. § 100.30(7)(a), the defendant may nonetheless be liable if the plaintiff proves lack of good faith or bad faith. We say "arguably" because both parties' arguments in *22 Shawano* assumed that good faith was an issue even if the notice was filed, so we did not need to decide whether that was correct; and, while our language implicitly puts the burden on the plaintiff to establish bad faith where a notice has been filed, we did not explicitly address whether it was the plaintiffs' burden to prove bad faith or the defendant's burden to establish good faith.

¶ 28. Without briefs from either party on the proper reading and applicability of *22 Shawano*, we are reluctant to resolve the parties' dispute over whether compliance with Wis. Stat. § 100.30(7)(a), as provided in subsec. (7)(c), requires that Kwik Trip establish good faith in addition to establishing that it filed the required notices. *See* § 100.30(7). We note that this appears to be a fairly intricate issue of statutory construc-

tion that involves other provisions in § 100.30.[9] It is not necessary to resolve this issue because, even if we

[9] For example, Wɪs. Sᴛᴀᴛ. § 100.30(6)(a)7. provides for a defense where the retailer proves that "the price . . . [was] made in good faith to meet an existing price of a competitor" based on certain types of documents kept by the retailer. If immunity from liability on a private cause of action under subsec. (7)(c)2. requires the retailer to prove that it lowered its price in good faith below the statutorily defined cost to meet the existing price of a competitor, as well as proving that it filed the requisite notice with the department, then there is reduced incentive to file the notice: even if the retailer files the notice, it must present essentially all the evidence it needs to present under subsec. (6)(a)7. to establish a "meet competition" defense. True, a "[f]ailure to comply with subsec. (7)(a) creates a rebuttable presumption that the retailer . . . did not lower the price to meet the existing price of a competitor." Section 100.30(7)(b). This provides some incentive for the retailer to file the notifications even if the retailer must still prove a defense under subsec. (6)(a)7. But the incentive is much less.

In addition, because both Wɪs. Sᴛᴀᴛ. § 100.30(7)(b) and (c) refer to "compli[ance] with para. (a)," presumably this phrase has the same meaning in both subsections. The rebuttable presumption resulting from the "failure to comply with para. (a)" in subsec. (7)(b) is that the retailer "did not lower the price to meet the existing price of a competitor." There is no reference to good faith.

Another related provision is Wɪs. Sᴛᴀᴛ. § 100.30(7)(c)1., which states that if the retailer "complies with para. (a)," the department "may not proceed under sub. (5)" against the retailer. Section 100.30(7)(c)1. It makes no sense to require a retailer to prove good faith—which requires a proceeding in itself—in order to prevent the department from proceeding against it. In contrast, whether the retailer filed the requisite notice for a particular day can be ascertained before any proceeding by the department is initiated. (Because para. (c)1. is limited to department proceedings under subsec. (5), both the department and the district attorney may bring forfeiture actions under subsec. (4), and the district attorney may bring an

813

assume for purposes of argument that the plaintiffs' construction is the correct one, we agree with the circuit court that the undisputed facts show that, in addition to filing the notices required by § 100.30(7)(a) on the relevant days, Kwik Trip lowered its prices in good faith to meet competition on those days.

¶ 29. It is undisputed that Go America purchased the Marquette store in June 2001; previously it was

---

action to enjoin a violation under subsec. (5)(b)), even if the retailer "complies with para. (a)." Section 100.30(7)(c)1.)

Of course, even if the *defendant need not prove good faith* in order to prove compliance with WIS. STAT. § 100.30(7)(a) for purposes of immunity under § 100.30(7)(c)2., the question remains whether the plaintiff may recover if the *plaintiff proves bad faith* even if the defendant has filed the notices required by § 100.30(7)(a). As we have stated above in paragraph 27, arguably *22 Shawano* suggests the answer is "yes." The full answer to this question likely depends on an analysis of the relationship between the exception in § 100.30(6)(a)7. and the various provisions of § 100.30(7). We note that this comment to WIS. ADMIN. CODE § ATCP 105.23 indicates that a notice filed as required by § 100.30(7)(a) establishes a presumption that the seller comes within the exception in § 100.30(6)(a)7:

> **Note:** Section 100.30, Stats., prohibits sales of motor fuel below "cost" as defined in the statute. A seller may claim, as a defense, that the seller sold motor fuel below cost in order to meet the existing price of a competitor. Under s. 100.30(7), Stats., *a seller who wishes to establish a presumptive "meeting competition" defense must notify the department* of the below-cost selling price on the day the seller offers that price to meet a competitor's price. The seller must give notice "in the form and manner required by the department." Section ATCP 105.23 spells out the "form and manner" in which a seller must give the required notice. Section ATCP 1005.23 does not affect or replace s. ATCP 105.009.

WIS. ADMIN. CODE § ATCP 105.23 (emphasis added). This comment is consistent with the view that, notwithstanding compliance with § 100.30(7)(a), a plaintiff could rebut the presumption by proving bad faith.

814

operated by another owner under the name IOCO. Go America opened its Prairie du Chien store in January 2002. The affidavits and deposition of Connie Breier, petroleum retail pricing coordinator for Kwik Trip, detail Kwik Trip's practice of surveying the prices of its competitors each day and filing a notice when it lowered its price to meet competition. Breier averred that since 1999 Kwik Trip has considered the store that Go America now owns in Marquette to be a direct competitor of Kwik Trip's two Prairie du Chien stores and has monitored it since 1999 for purposes of setting its gasoline prices. Kwik Trip submitted copies of price surveys to support this assertion.

¶ 30. Breier's deposition testimony at the pages cited by the plaintiffs does not permit a reasonable inference that Kwik Trip did not do daily price surveys of the Go America Marquette store before Go America began operating its Prairie du Chien store.[10] Instead, Breier's testimony at the pages cited by the plaintiffs and by Kwik Trip are capable of only one reasonable inference—that Kwik Trip's Prairie du Chien stores did daily prices surveys and occasionally lowered its prices to compete with prices in Marquette before Go America opened its Prairie du Chien store.

¶ 31. In summary, Kwik Trip's submissions show that it lowered its prices in good faith to meet the existing prices of a competitor—Go America's Marquette store—on the days it filed notices with the department, and the plaintiffs have directed us to no submissions that show or create a reasonable inference to the contrary. Accordingly, even if Kwik Trip must establish

---

[10] The plaintiffs' phrasing of their argument that there are reasonable inferences supporting their position is inconsistent with their argument at other points in their brief that they are entitled to summary judgment on the good faith issue.

its good faith, as well as the filing of notices in order to be immune from liability under Wis. Stat. § 100.30(7)(c)2, it has done so.

III. Whether Kwik Trip is Entitled to Immunity for May 19 through May 23, 2003

¶ 32. The plaintiffs argue that Kwik Trip is not entitled to immunity under Wis. Stat. § 100.30(7)(c)2 for May 19 through May 23, 2003, because, even though Kwik Trip filed the required notices for those dates, Kwik Trip's price was below that of Go America's Marquette store. Although the notices accurately stated that Kwik Trip's price on those days "matched" those of Indianhead's store in Prairie du Chien, according to the plaintiffs it is impermissible for Kwik Trip to rely on Indianhead's price. The plaintiffs refer us to *Heiden v. Ray's Inc.*, 34 Wis. 2d 632, 150 N.W.2d 467 (1967), which, they contend, establishes that lowering a price below statutory cost to meet the price of competitors who were violating the act does not establish a defense under § 100.30(6)(a)7.

¶ 33. Before discussing *Heiden*, we summarize some additional facts relevant to this argument. We treat these as undisputed facts because Kwik Trip asserts they are, there is no reply brief to dispute that, and, as best we can tell from the plaintiffs' main brief, their position is that there are no material factual disputes on this issue. On May 19, 2003, Kwik Trip raised its price for midgrade gasoline in Prairie du Chien to $1.439 in response to prices at Go America's Marquette store. Indianhead then changed its price to $1.439. Later that same day, Go America raised its price at its Marquette store for midgrade gasoline to $1.459. Indianhead's price remained at $1.439. Kwik Trip kept its price at $1.439, as did Indianhead, until May 23,

2003. Kwik Trip's store in Prairie du Chien and Indianhead's store in Prairie du Chien are competitors.

¶ 34. We agree with Kwik Trip that *Heiden* does not support the plaintiffs' position that Kwik Trip was required to raise its price to $1.459 when Go America in Marquette raised its price to that amount on May 19, 2003, given that Indianhead remained at $1.439. In *Heiden*, the evidence presented by the defendants for a "meet competition" defense showed they set their prices *lower* than those of their competitors. *Heiden*, 34 Wis. 2d at 640–41.[11] In contrast, here the undisputed evidence is that Kwik Trip's price on the days challenged matched that of Indianhead; they were not lower than Indianhead's price.

¶ 35. The plaintiffs have presented no authority that supports their argument that Kwik Trip was required to raise its price in response to Go America's Marquette store raising its price, even though another competitor of Kwik Trip did not raise its price. Accordingly, based on the undisputed facts, Kwik Trip was entitled to summary judgment for May 19 through May 23, 2003.

## CONCLUSION

¶ 36. The circuit court correctly granted summary judgment in favor of Kwik Trip. The court correctly construed the phrase "existing price of a competi-

---

[11] When *Heiden v. Ray's Inc.*, 34 Wis. 2d 632, 150 N.W.2d 467 (1967), was decided there was no provision comparable to Wis. Stat. § 100.30(7), which was enacted by 1997 Wis. Act 55, § 27. *See also* 1997 Wis. Act 55, § 24 (creating a private right of action in § 100.30(5m)). Thus, the only issue was a defense under what is now § 100.30(6)(a)7, then § 100.30(6)(g) (1963).

tor" in WIS. STAT. § 100.30(2)(cj) and the phrase "meet an existing price of a competitor" in § 100.30(6)(a)7 and (7)(a) to apply to a competitor that is located in a bordering state. Assuming that the defendant must establish that it acted in good faith in order to be immune from liability under § 100.30(7)(c)2, the circuit court correctly concluded that the undisputed facts showed Kwik Trip acted in good faith. Finally, Kwik Trip was not prohibited by any provision of the act from matching Indianhead's prices from May 19 through May 23, 2003.

*By the Court.*—Judgment affirmed.